State of West Virginia *v.* C. William Lawson

(No. 9329)

Submitted September 29, 1942.   Decided November 4, 1942.

Fox, PRESIDENT, dissenting.

J. Leonard Baer, for plaintiff in error.

William S. Wysong, Attorney General, and Kenneth E. Hines, Assistant Attorney General, for defendant in error.

LOVINS, JUDGE:

Plaintiff in error, C. William Lawson, was indicted in the Criminal Court of Raleigh County, charged with malicious wounding of Pete Corey. The indictment also charged that Lawson had twice been convicted of felonies, one conviction being in the Circuit Court of Lee County, Virginia, and the other in the District Court of the United States for the Southern District of West Virginia. He entered a plea of not guilty, and a trial was had resulting in a verdict of guilty of the offense of malicious wounding as charged and that theretofore he had twice been convicted of a felony in the United States. After overruling a motion to set aside the verdict, the trial court sentenced Lawson to life imprisonment in the penitentiary. On petition of Lawson to the Circuit Court of Raleigh County a writ of error and supersedeas was denied, and he brings the case here for review.

Evidence introduced on behalf of the State shows that Lawson entered Corey's place of business in Beckley, the Rainbow Lunch, on the evening of September 2, 1941, and, after some discussion about obtaining change for a quarter, engaged in an altercation with Corey, in the course of which Corey was beaten about the head by Lawson with a table leg. Corey secured a pistol from beneath a counter during the scuffle and in the ensuing struggle for possession of it, the pistol was discharged and a customer in the lunch room, H. K. Stairs, was wounded in the leg. From the beating administered by

Lawson, Corey sustained two lacerations on the back of his head, each requiring four or five stitches. The errors assigned by plaintiff in error relate to procedure, and, therefore, this brief recital of the factual background will suffice.

Plaintiff in error filed a plea of former jeopardy in which it is alleged that he was indicted at the October, 1940, Term of the Criminal Court of Raleigh County, charged with the crime of receiving stolen goods, which indictment also charged that he had twice been convicted of offenses punishable by confinement in a penitentiary, and that upon the trial under that indictment he was acquitted. He further alleges that the former convictions alleged in that indictment are the same as those alleged in the indictment in this case, and asserts that such acquittal bars the charges of prior convictions contained in the indictment herein. A charge of prior conviction does not constitute a charge or allegation of the crime for which a person is being tried, but is merely an allegation of the status of the defendant, which, if supported by proof, determines the extent of the punishment to be imposed and has no connection with the offense for which defendant is being tried, except to determine his punishment in the event he is found guilty thereof. *State* v. *Graham,* 68 W. Va. 248, 69 S. E. 1010, 40 L. R. A. (N. S.) 924. The defendant had already been convicted of felonies in Virginia and in the Federal District Court. Therefore, there is no question of former jeopardy, and the demurrer to the special plea asserting former jeopardy was correctly sustained.

Under our practice a charge of former conviction, as well as the principal or substantive charge of crime, is submitted to the same jury. Code, 61-11-19; as amended by Chapter 26, Acts 1939. The charge of former convictions must be proved with the same degree of certainty as the charge of the substantive offense, but the evidence to establish such convictions should not be emphasized to the extent that the defendant will be prejudiced thereby. *State* v. *Stout,* 116 W. Va. 398, 180 S. E. 443. The fact of prior conviction and identity of the accused as

the person so convicted are the necessary elements to be proved. The first may be proved by a formal record; the other by evidence which establishes the identity of the person on trial as being the same person formerly convicted, and rarely is it necessary to go farther. In this case the State not only identified the defendant by means of oral proof and comparison of fingerprints, but, in addition, submitted to the jury photographs of defendant from the prison records of the Virginia and Federal penitentiaries, each photograph prominently showing the prison number of plaintiff in error. The photographs are attached to records including data with respect to the commission of offenses other than those alleged in the indictment. The trial court excluded all data appearing on the photographs and prison records except the fingerprints and photographs, which were admitted over the objection of Lawson. Two expert witnesses testify that the fingerprints of Lawson taken on the day of his trial, when compared with those appearing on the prison records from the Federal Penitentiary at Atlanta, Georgia, and the State Penitentiary at Richmond, Virginia, as introduced in evidence, show that he is the same person who served terms therein. It is apparent that in the absence of denial that this was sufficient identification of the accused. No reason is perceived why the photographs should have been submitted to further identify him. The admission of the photographs overemphasized the former convictions of the accused, was prejudicial to him, and contrary to the rule laid down by this Court in the case of *State* v. *Stout, supra.* In *State* v. *Smith,* 128 Ore. 515, 273 P. 323, it was held that photographs and fingerprints are admissible to identify an accused as a previous offender for the purpose of increased punishment; but under the law of the state of Oregon, as quoted in the opinion, separate juries try the issue of guilt of the accused as to the substantive crime and as to former convictions. Since in this jurisdiction both issues are submitted to the same jury, we believe that the evidence of former convictions should be admitted with caution and restricted in its application. *State* v. *Stout, supra; State* v.

*Fisher,* 123 W. Va. 745, 18 S. E. 2d 649. We do not believe that any formula can be prescribed as to the amount of evidence necessary but where the identity is sufficiently proved, as here, admission of additional testimony which further emphasizes the former convictions is erroneous.

We take notice of the broad application of the provisions of Code, 61-11-19, as amended, requiring life imprisonment of a person who has been twice before convicted in the United States of crimes punishable by confinement in the penitentiary. It is conceivable that there may be crimes which are punishable by confinement in a penitentiary in other jurisdictions and that the same crimes would be classed as misdemeanors under our laws. In such event, it would seem proper that the laws of this State should be considered in determining the grade of the crimes for which there have been former convictions.

Plaintiff in error asserts that the trial court erred in admitting, over objection, testimony of Tom Bostic and wife, who reside near the home of the accused. Their testimony is to the effect that the wife and son of the plaintiff in error, a short time before the altercation with Corey, were hiding in the woods near their home, and that Lawson was looking for them with a club or stick in his hand, which testimony was admitted by the trial court on the theory that it tended to show the *quo animo* of Lawson. The inference that they were hiding from Lawson in fear of bodily harm was denied by Lawson's wife and son. In *State v. Waldron,* 71 W. Va. 1, 75 S. E. 558, it was held error to reject testimony showing that, shortly before the murder with which defendant was charged, deceased had engaged in a fight with a person other than defendant. There are other holdings of a similar nature in cases decided by this Court. *State v. Arrington,* 88 W. Va. 152, 106 S. E. 445; *State v. Lutz,* 85 W. Va. 330, 101 S. E. 434. In the case of *State v. Arrington, supra,* threats made by the deceased and not communicated to defendant were held relevant and admissible where the accused claimed self-defense and the evidence was conflicting as to who was the aggressor. In the case of *State v. Lutz, supra,* a threat made by the ac-

cused that he would kill anyone who undertook to arrest him was held admissible to show mental condition of the accused, who actually carried out his threat by killing a police officer.

Reasons for admission of testimony of other acts and conduct of the accused to show intent are non-existent in this case. Inferences may be drawn from the testimony in question here, from which it may appear that Lawson was tyrannical in his household and cruel to his family, but we do not believe that such showing has any bearing upon his guilt of the charge of malicious wounding. The evidence of the Bostics falls short of revealing any actual animus or actual use of whatever weapon Lawson had in his hands when he was observed by the witnesses. Further it cannot be said that because his wife and son were the objects of his anger at the time of the Bostics' observation that the same motives actuated Lawson in his attack upon Corey. We do not believe that any inferences which the jury could draw from such testimony were relevant. It follows that defendant was prejudiced thereby.

For the reasons herein stated, we reverse the judgments of the Circuit Court and the Criminal Court of Raleigh County, set aside the verdict and award defendant a new trial.

*Judgments reversed; verdict set aside; new trial awarded.*

Fox, PRESIDENT, dissenting:

The majority opinion is based largely on the point that the state went too far in its proof tending to establish the identity of the defendant as the person who had been twice formerly convicted in the United States of a crime punishable by confinement in the penitentiary. The fact that he was so convicted was alleged in the indictment, as our statute requires. Code, 61-11-19. Under that section, the jury was required to find the fact of such convictions, otherwise, the additional punishment provided for therein could not be imposed. I am in sympathy with the manifest purposes of the Court to discourage the introduction of any

testimony bearing upon facts connected with former crimes. I think a person charged with crime should be tried on the offense alleged, and that where he himself does not bring his character into question, all references to former transgressions of law should be avoided. In *State* v. *Stout,* 116 W. Va. 398, 180 S. E. 443, the reading to the jury of a former indictment, incorporated in the indictment then pending, and which went into detail as to the crime for which the defendant had been formerly convicted, was held sufficient ground for reversal of a judgment of conviction. In that case, it was stated that it was unnecessary to copy the former indictment into the one on which defendant was being tried, and I think that was the real error in the case, rather than the reading of the indictment to the jury, for the reason that, under our practice, the jury is permitted to take the indictment at the end of the trial, and, indeed, its verdict is usually written on the back thereof. It may be questioned whether the mere reading of the indictment was prejudicial when the indictment itself was afterwards delivered to the jury and presumably read by it. But in that case, the Court said that the proof should have been confined to the record of the judgment of the court on the former trial "and to the identification of the accused as the person formerly convicted." In the case at bar, the indictment merely alleged the former convictions, and the evidence introduced to sustain the same was court records, the testimony of prison officials, photographs and fingerprints, bearing solely on the matter of identification. It was probably not necessary to go to this extent. Clearly, the court records were admissible, as was the testimony of the prison officials that the defendant was the same person who had been confined in the penal institutions with which they were connected. Ordinarily, that should have been sufficient. But whatever harm was suffered by the defendant had then resulted, and the mere fact that additional testimony as to identification was introduced, added nothing thereto and was not, in my opinion, prejudicial. I do not believe that prosecuting attorneys should, ordinarily, be limited in the amount of proof they may

present to a jury. The state having the burden of proof, and being required to establish every material point of the case beyond all reasonable doubt, should not be restricted and made to fear that too strong a case will be made. This is particularly true with respect to identification.

I concur in the idea that the present habitual criminal act is unfair to a defendant. The mere fact that he is charged with former crimes in the indictment on which he is being tried places him at a disadvantage. The question of former conviction should, in my opinion, be determined in a separate and independent proceeding. In some jurisdictions, such a charge is tried by a separate jury, and our statute provides for such a procedure. Code, 62-8-4, as amended by Chapter 23, Acts of the Legislature, 1939. However this may be, this Court could not justify any modification of the statute, or its application, different from that plainly intended by the Legislature. I do not agree with the idea advanced that because an independent proceeding has been provided for, the procedure set out in Code, 61-11-19, may not also be followed.

In my opinion, the evidence of Tom Bostic and his wife had no substantial effect upon the jury in arriving at its verdict. Testimony of that character should have been more strictly limited, but I do not believe any irregularity in its admission in this case is sufficient ground upon which to base a reversal.

Therefore, I would affirm the judgment.